# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KATRINA MARIE JUCHNIK, ) | CASE NO. 1:18-CV-02489 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ) | |
| ANDREW SAUL, ) | |
| *Comm'r of Soc. Sec.*, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff, Katrina Marie Juchnik (hereinafter "Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (hereinafter " Commissioner"), denying her application for Supplemental Security Income ("SSI") under Titles XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 10). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

## I. Procedural History

On November 9, 2012, Plaintiff filed her application for SSI, alleging a disability onset date of September 1, 2010. (Transcript ("Tr.") 267). After her application was denied initially and

upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 15, 2014. (Tr. 140-154). Plaintiff participated at the hearing, was represented by counsel, and testified. (Tr. 164-193). On December 19, 2014, the ALJ found Plaintiff not disabled. (Tr. 153-154). On April 7, 2016, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On June 10, 2016, Plaintiff, through counsel, filed a complaint challenging the Commissioner's final decision in case No. 1:16-cv-1424 before Judge Solomon Oliver, Jr. (Tr. 1222-1226). On January 23, 2017, Judge Oliver approved a Joint Motion to Remand. (Tr. 1270).

On August 7, 2017, the Appeals Council remanded the matter to the ALJ and consolidated Plaintiff's subsequent SSI application, filed on April 14, 2016, with the previously filed application that was remanded. (Tr. 1274).

On February 27, 2018, Plaintiff appeared at a second hearing, was represented by counsel, and testified. (Tr. 1087-1124). A vocational expert ("VE") also appeared and testified. *Id.* On August 29, 2018, the ALJ again found Plaintiff was not disabled. (Tr. 1074-1075). Plaintiff opted not to appeal to the Appeals Council and instead filed a complaint with this court on October 29, 2018. (R. 1).

The parties have completed briefing in this case. (R. 12, 14 & 15). Plaintiff asserts the following assignment of error: the ALJ's analysis of a treating neurologist's medical opinion violated the treating physician rule. (R. 12, PageID# 2598).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

In an undated disability form, Plaintiff stated that she had an "[i]ncrease of migraines along with depression and anxiety" that began worsening in August or September of 2016. (Tr. 1405).

On January 2, 2015, an MRI was performed on Plaintiff's brain to address her headache complaints. (Tr. 987). The impression was "[n]o acute intracranial process. Incidental note made of a pineal gland cyst. Minimal paranasal sinus inflammatory disease." (Tr. 988).

On January 16, 2015, Plaintiff was seen by neurologist Roya Vakili, M.D. (Tr. 1770-1773). Dr. Vakili noted that the MRI revealed "benign" findings, but that it may be repeated in one year to evaluate the stability of the pineal cyst. (Tr. 1770). Plaintiff reported a two-year history of migraines, and indicated that her migraines last for days and that her headaches are frequent. *Id*.

On March 17, 2015, Plaintiff was seen by Dr. Vakili and reported that her headaches and migraines are frequent. (Tr. 1766). She reported Soma was helpful, but she reported no improvement with Norflex. *Id*.

On May 15, 2015, Plaintiff was seen by Dr. Vakili, expressing interest in an occipital nerve block. (Tr. 2181). She reported having a migraine that day. *Id*. Plaintiff found "Imitrex to help [her] migraine if taken at onset." *Id*. She was taken off Zonisamide, which caused mood changes. *Id*. "Her headaches were decreasing." *Id*. She was also taking Vyvance and Cymbalta. *Id*. Previously, she had been prescribed Topamax and Gabapentin, which she did not tolerate well.

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

3

*Id*.

On July 10, 2015, Plaintiff reported suffering from a migraine for the past two days. (Tr. 1748-1749).

On November 3, 2015, Plaintiff stated that her migraines had become more frequent, reporting more than fifteen days of headaches per month, and more than eight migraines per month. (Tr. 1734). She was interested in trying Botox therapy and was willing to try Topamax again. *Id*.

On December 15, 2015, Plaintiff was seen by Dr. Vakili for Botox treatment. (Tr. 1865). Plaintiff recently restarted Topamax after her prior visit and reported 25 percent less frequent migraines. *Id*. Plaintiff reported more than fifteen days of headaches a month. (Tr. 1864).

On March 8, 2016, Plaintiff reported "her migraine frequency decreased significantly by more than 50% [since her last Botox treatment, but] [s]he has noticed the last few weeks her migraines [were] more frequent again." (Tr. 1713). Plaintiff was also taking Fioricet for her migraines, which she found helpful. *Id*. Dr. Vakili administered a second Botox treatment. *Id*.

On July 5, 2016, Plaintiff reported that her previously daily headaches "decreased significantly by more than 50%," but she "notices she is due for Botox few weeks before she needs next [treatment]." (Tr. 1886). Plaintiff again reported finding Fioricet was helpful for her headaches. *Id*. Dr. Vakili administered a third Botox treatment. (Tr. 1892).

On September 30, 2016, Dr. Vakili administered a fourth Botox treatment, and Plaintiff reported the same subjective symptomology. (Tr. 2469-2470).

On January 6, 2017, Dr. Vakili administered another Botox treatment, and Plaintiff reported the same subjective symptomology. (Tr. 2484-2485).

On April 7, 2017, Dr. Vakili administered yet another Botox treatment, and Plaintiff

4

reported the same subjective symptomology. (Tr. 2519-2520).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On September 16, 2016, Dr. Vakili completed a check-the-box style Headache Residual Functional Capacity questionnaire, several years after Plaintiff's SSI application was filed. (Tr. 2111-2114). The questionnaire covered the time period from April 14, 2016 through the present. *Id*. She indicated Plaintiff had diagnoses of chronic migraines, fibromyalgia, back pain, and leg weakness with fair to poor prognosis. (Tr. 2111). Dr. Vakili indicated Plaintiff suffers from migraine headaches, but left blank the form's request for a description of the patient's nature, location, and intensity/severity of the headaches. *Id*. Dr. Vakili checked boxes identifying the following symptoms associated with Plaintiff's headaches: vertigo, nausea/vomiting, malaise, photosensitivity, inability to concentrate, impaired sleep, visual disturbances, mood changes, mental confusion, and impaired appetite. *Id*. Dr. Vakili wrote that Plaintiff has seven headaches per week or thirty per month. *Id*. Further, she indicated Plaintiff's headaches typically last 24 hours. *Id*. Plaintiff's headaches were triggered by the following: bright lights, noise, strong odors, lack of sleep, menstruation, stress, vigorous exercise, hunger, and weather changes. *Id*. The headaches were worsened by bright lights, moving around, noise, coughing, and/or straining/bowel movement. *Id*. Plaintiff's headaches were made better by lying down, taking medications, Botox injections, a quiet place, a dark room, hot packs, and cold packs. *Id*. When asked what positive test results and objective signs corroborated Plaintiff's headaches, Dr. Vakili checked boxes for tenderness and impaired sleep, and left unchecked boxes for weight loss, x-rays, MRI/CT scans, EEGs, impaired appetite or gastritis, and other. (Tr. 2112). Emotional factors contributed somewhat to Plaintiff's headaches. *Id*. Plaintiff's treatment and medications included Botox injections every three months, Topamax, Soma and Cymbalta. *Id*. When asked

whether Plaintiff's headaches generally precluded Plaintiff from performing even basic work activities, Dr. Vakili checked a box indicating "yes." *Id*. Dr. Vakili opined Plaintiff would require daily unscheduled breaks of a "few hours" in duration where she would need to lie down or sit quietly. *Id*. Dr. Vakili indicated Plaintiff would be precluded from performing even "low stress" jobs, but left blank the form's request for an explanation. *Id*. Dr. Vakili predicted Plaintiff would likely be absent from work more than four days per month as a result of her impairments. *Id*.

**B. Relevant Hearing Testimony**

At the February 27, 2018 hearing, Plaintiff testified as follows:

- She lives with her husband and two minor children aged nine and seven. (Tr. 1091).

- She completed the eleventh grade. *Id*.

- She does not prepare any meals, does not wash dishes, and does not do the laundry. *Id*.

- Her husband performs the household chores, as well as the children who have been taught to be independent. (Tr. 1092).

- She occasionally goes shopping. *Id.*

- She has some difficulty maintaining personal care, and eliminated clothing from her wardrobe that would cause pain when trying to don. (Tr. 1092).

- She used drugs as a teenager. *Id*.

- She is unable to attend special events at her children's school. She does attend parent/teacher conferences, but the teachers have whittled those sessions down to ten to fifteen minutes and they occur only once or twice a year. (Tr. 1093).

- She wakes up ten to twenty minutes before her children to make sure they are awake and ready to go to school. (Tr. 1093-1094). However, the children set out their own clothes the night before as well as a breakfast snack that will be at the table waiting for them the next morning. After they dress and eat, her husband takes them to school. (Tr. 1094). She does not drive her children to school, except occasionally if her husband cannot do so. (Tr. 1094-1095). When she does drive, the journey lasts ten minutes or less. (Tr. 1095).

- Her husband prepares the children's dinner, or they fend for themselves. *Id*.

- Her parents help a lot and often stay with them for up to two weeks at a time. (Tr. 1097). They come twice a month for four to five days up to a week. (Tr. 1111).

- She receives Botox injections every three months for her migraines. (Tr. 1113). The injections "help, but they don't take me having migraines away completely." She explained that the intensity of the migraines are lessened, the frequency decreases, and the duration is also shorter. *Id*. The beneficial effects of the injections begin to wear off during the second month, "maybe a week or two into that month." *Id*. She cannot schedule the Botox injections closer together due to side effects. *Id*.

> The ALJ posed the following hypothetical question to the VE:
>
> So, let's assume a hypothetical person of the same age, education as Ms. Juchnik. If this person could lift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk for 6 hours; and sit for 6; with a sit/stand option every hour that lasts for about 5 minutes, but that person is not leaving the workstation.
>
> This person could occasionally climb stairs and ramps; no ladders, ropes, or scaffolding. This person can frequently balance and stoop and occasionally kneel, crouch, and crawl. This person can frequently reach in all directions; frequently handle, finger, and feel.
>
> This person would not be exposed to unprotected heights or dangerous moving machinery; and would perform simple routine tasks with simple short instructions; make simple decisions; have few workplace changes; no fast-paced production quota requirements; occasional and superficial interaction with coworkers and supervisors.
>
> Superficial refers to the ability to ask and answer simple questions, to give and follow simple direction. This person is not interacting with the public.

(Tr. 1117).

The VE testified that such an individual could perform a number of jobs and provided multiple examples. (Tr. 1118). The ALJ crafted a second hypothetical that restricted the individual to "only lifting and carrying ten pounds occasionally, five pounds frequently. This person can only stand and walk for two hours in an eight-hour day and sit for six. They still need

a sit/stand option, but now, it's every 30 minutes. It only lasts for about one minute, and again, they don't have to leave the workstation. Everything [else] is the same except that we're going to change the balancing and stooping to occasional" and no driving or operation of foot controls. *Id*. The VE testified that such an individual could not perform any of the jobs identified in response to the first hypothetical, but identified a number of other jobs that such an individual could perform. (Tr. 1118-1119). Finally, the ALJ inquired as to the impact of attendance issues such as tardiness or absenteeism at least three times per month. (Tr. 1119). The VE testified that such limitations eliminate all unskilled jobs, as employers tolerate no more than two absences or instances of tardiness/leaving early per month. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c)

and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 7, 2012, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: anxiety disorder, depressive disorder, attention deficit hyperactivity disorder (ADHD); hypothyroidism; mild lumbar disc bulge with annular tear; fibromyalgia; bilateral writer's cramps; and migraine headaches (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) with lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking for six hours in an eight hour day, sitting for six hours in an eight hour day with a sit/stand option every hour for about five minutes but does not leave the

>   work station; occasionally climb stairs/ramps, no climbing of ladders, ropes or scaffolds; frequent balance, stoop; occasional kneel, crouch and crawl; frequent reaching in all directions; frequent handle, finger and feel; no heights, dangerous machinery; and the claimant is limited to performing simple routine tasks with simple short instructions, make simple decisions; have few workplace changes, no fast pace production quota requirements, occasional and superficial interaction with coworkers and supervisors and superficial means the ability to ask and answer simple questions and give and follow simple directions, and there is no public interaction.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on *** 1986 and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has a limited education and is able to communicate in English (20 C.F.R. § 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since November 7, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 1067-1075).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look

into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

In her sole assignment of error, Plaintiff argues that the ALJ failed to follow the procedural requirements of the treating physician rule when evaluating the medical opinion from Dr. Vakili, as the ALJ allegedly failed to provide "good reasons" for the "little weight" assigned to the doctor's opinion. (R. 12, PageID# 2600). Plaintiff maintains that this error is not harmless, as Dr. Vakili's opinion, if credited, would have rendered her unemployable based on the VE's testimony that there would be no competitive employment available for an individual with severe impairments that cause her to be tardy or absent from the workplace three days per month. (*Id.* at 2599, *citing* Tr. 1119-1120).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240

(6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

> The ALJ addressed Dr. Vakili's opinions in a brief discussion as follows:
>
>> Little weight is given to the medical source statement completed by Roya Vakili, M.D. dated September 16, 2016. She noted that the claimant has headaches 24/7 and concluded that the claimant is incapable of even low stress jobs and would be absent from work more than four days a month but such opinion is not supported by her own treatment records which indicate that the claimant's headaches have improved by 50% with Botox injections as well as the evidence that the claimant is able to care for two small children (Exhibit 78F).

(Tr. 1073).

The ALJ's first reason for discounting the weight accorded to Dr. Vakili's opinion is an alleged inconsistency between the debilitating limitations the doctor assessed in the questionnaire and the doctor's treatment notes that Plaintiff's headaches decreased in severity and duration by fifty percent after receiving Botox injections. (Tr. 1073). If the ALJ has identified an obvious inconsistency, such an inconsistency can provide a good reason for rejecting a treating source's opinion. *See, e.g.*, *Landuyt v. Berry Hill*, 2018 U.S. Dist. LEXIS 51239, *15 (N.D. Iowa Mar. 28, 2018) ("Inconsistencies with the treatment notes provide a good reason to not give the treating physician's opinion controlling weight."); *Jung v. Comm'r of Soc. Sec.*, No. 1:11-CV-34, 2012 WL 346663, at *14 (S.D. Ohio Feb. 2, 2012) (finding the ALJ gave "good reasons" for discounting a treating physician's opinions "by citing their internal and external inconsistencies and contradictions"), *report and recommendation adopted*, 2012 WL 628459 (S.D. Ohio Feb. 27, 2012).

The court, however, disagrees with the Commissioner that Dr. Vakili's treatment notes inherently undermine or are inconsistent with her opinion. While the treatment records do routinely document the aforementioned fifty percent improvement after Botox treatment received roughly every three months, each pertinent treatment note, set forth in greater detail above, indicates that the ameliorative effects of the injections would wear off weeks before Plaintiff's next round of Botox injections. Plaintiff testimony at the hearing echoed this point, where she explained that the positive effects of the Botox injections would wear off halfway through the three-month time period, and that she could not obtain the injections more frequently due to side effects. (Tr. 1113). While the ALJ was not required to accept Plaintiff's testimony or her

13

statements to Dr. Vakili, the court finds that the ALJ's decision—under the facts of this case—has not set forth a good reason for discounting a treating source's opinion where the decision relies on an incomplete characterization of the medical record by not addressing the provider's assertion that the relief from the injections was temporary and faded well before the next treatment session. Further, even if the improvement from the Botox injections rendered Dr. Vakili's opinion inconsistent with the record for the first two of the three months after it was administered, the VE's testimony regarding absenteeism surely would preclude an individual's ability to engage in gainful employment if the hypothetical individual would be absent at an impermissible rate one out of every three months. By not expressly addressing that issue, the court cannot determine whether substantial evidence supports the ALJ's decision.

Lastly, it is possible that the ALJ concluded that the reports of improvement in the treatment record were true and accurate, but disbelieved the concomitant statements as to the duration of said improvement. Crediting only half the statement is a rather peculiar finding even if it is not impermissible. Nonetheless, such a finding begs for an explanation, but the decision does not contain one. The procedural protections of the treating physician rule require that an ALJ's reasons be sufficiently specific to allow for meaningful review. Absent further explanation, the court is deprived of this ability as it can only speculate at how the ALJ arrived at such a conclusion.[2]

---

[2] There is some case law that suggests that a physician's opinion regarding how often an individual would miss work, untethered from any explanation as to why such absences would be necessary, is not a "medical opinion," and not entitled to any deference. *Compare Cocke v. Colvin*, 2014 U.S. Dist. LEXIS 24925, *2-3 n.1 (W.D. Ky. Feb. 27, 2014) (finding that an opinion as to a disabling level of absenteeism is not entitled to special significance because it arguably goes to the ultimate issue of disability and is not a genuine medical opinion); *Saulic v. Commissioner*, 2013 U.S. Dist. LEXIS 131960, 2013 WL 5234243 (N.D. Ohio) (the doctor "did not 'know,' in the sense of an objective medical fact, that, if properly motivated, the plaintiff ...

The Commissioner argues that the ALJ gave a second good reason for discounting the opinion of Dr. Vakili—Plaintiff's ability to take care of her two children. (R. 14, PageID# 2612). Plaintiff asserts that the ALJ's decision contains no citations to the record supporting such a conclusion. (R. 12, PageID# 2601). Further, Plaintiff argues, the ALJ's conclusion is not supported by the record as Plaintiff testified largely to the opposite—that she engages in very little care of her two children. *Id*. Defendant contends that the ALJ's decision must be read as a whole and that the ALJ's conclusion is within the "zone of choice" that an ALJ has without court interference. (R. 14, PageID# 2613).

Plaintiff is correct that the ALJ, when concluding that Dr. Vakili's opinion is unsupportable because Plaintiff can care for her small children, fails to cite any portion of the record supporting such a statement. (Tr. 1073). Reading the record as a whole, the ALJ does mention earlier in the decision that, "[t]he claimant testified at her hearing that she gets her children ready for school, prepares meals, and occasionally goes grocery shopping. She indicated that she does some of the housekeeping with the assistance of her children but that her dad does most of the household chores." (Tr. 1069). While the ALJ again does not specifically cite to the record, the decision

---

would require absences in excess of 4 days per month") and *Sharp v. Commissioner*, 152 Fed. Appx. 503, 2005 WL 2811812 (6th Cir. 2005) (although the treating physician's opinion regarding absenteeisms "come[s] close to stating an ultimate opinion about the existence of a disability," in this case, it "came at the end of extensive treatment" and was not based upon uncritical acceptance of the patient's subjective complaints). *See also Chhay v. Colvin*, No. 1:13-CV-02229, 2014 U.S. Dist. LEXIS 131441, 2014 WL 4662024, at *6 (N.D. Ohio Sept. 17, 2014) ("Turning to Dr. Dasari's opinion that Chhay would miss four or more days of work per month, the Court is skeptical whether such an opinion truly constitutes a 'medical opinion' under the facts and circumstances of this case [because] Dr. Dasari's assessment fails to explain in any meaningful manner why Chhay would miss so many days of work."). However, as neither the ALJ nor the Commissioner made such a finding or such an argument, the court's opinion proceeds as though Dr. Vakili's statements in this regard are medical opinions subject to the strictures of the treating physician rule.

does indicate that this information comes from Plaintiff's hearing testimony. However, the ALJ's characterization of Plaintiff's testimony is incomplete. In some instances, the Plaintiff testified to the exact opposite of what the decision represents. Plaintiff specifically denied cooking any meals, washing dishes, or doing laundry. (Tr. 1091). Plaintiff did not testify that she does housekeeping, instead she testified that her husband or even her children do it, with occasional help from her parents. (Tr. 1092, 1097). On the key issue of whether Plaintiff cared for her two small children, the ALJ's assertion is simply not supported by Plaintiff's testimony.[3] While the ALJ was not required to credit Plaintiff's testimony, the ALJ's decision did not make a specific finding discounting her testimony on this issue; and, the assertion that Plaintiff cared for her small children in any meaningful manner—by engaging in the minimal or sporadic activities on their behalf—is not supported by substantial evidence. Moreover, even if such minimal activities could justifiably be characterized as "car[ing] for two small children," the ALJ did not explain how such sporadic activity undermined or conflicted with Dr. Vakili's opinion that Plaintiff would be absent from work four days a month or that she needed unscheduled breaks for a few hours each day.

As the decision fails to set forth good reasons for rejecting the opinion of a treating source, a remand is necessary. The court does note, however, that Dr. Vakili's opinion as well as her first instance of treating the Plaintiff post-dates the alleged onset date by several years. Furthermore, Dr. Vakili's opinion expressly limits itself to the timespan between April 14, 2016 and the date the opinion—September 16, 2016. (Tr. 2111). Thus, while a new decision should set forth good

---

[3] Plaintiff's testified that she neither cooks nor cleans for her children, that her husband typically takes them to school but she will drive them on those occasions when he cannot, that she attends ten-minute parent/teacher conferences once or twice a year, and that she or her husband would help them with their homework. (Tr. 1092-1097).

16

reasons for the weight ascribed to Dr. Vakili's opinion, the court leaves it to the sound discretion of the ALJ to determine the appropriate time period to which said opinion applies.

### VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

IT IS SO ORDERED.

                                           s/ *David A. Ruiz*
                                           David A. Ruiz
                                           United States Magistrate Judge

Date: February 27, 2020